STATE OF NORTH CAROLINA v. CURTIS WIKE

No. 8626SC1048

(Filed 5 May 1987)

**Automobiles and Other Vehicles § 126.5— breathalyzer—disbelief of results—refusal of second test—admission of defendant's statements**

Evidence that after defendant blew into the breathalyzer and was shown the reading, he refused to take a second test and made statements indicating his disbelief of the result did not violate the prohibition of N.C.G.S. § 20-139.1 against admitting a single test result. Nor was the admission of such evidence prejudicial error because it permitted the jury to infer that defendant registered a high reading on the test.

APPEAL by defendant from *Kenneth A. Griffin, Judge.* Judgment entered 5 May 1986 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 4 March 1987.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Public Defender Isabel Scott Day by Assistant Public Defender Marc D. Towler for defendant appellant.*

BECTON, Judge.

Defendant, Curtis Wike, was convicted of "driving a motor vehicle on a street or highway while under the influence of an intoxicating beverage" and was sentenced to imprisonment for one year. He appeals. We find no error.

I

The State's evidence showed that defendant's automobile was stopped by Officer Mills on 26 April 1985. The officer testified that he saw defendant's car drive off the side of the road, jerk back onto the pavement and then cross the center line several times in a weavelike pattern before he stopped the car. The officer described defendant as glassy-eyed, using slurred speech and an uncertain gait, and having a strong odor of alcohol. Defendant admitted to the officer that he had consumed beer. The officer arrested defendant and drove him to the police station where defendant agreed to submit to a breathalyzer test. After the first reading, however, defendant refused to continue the breathalyzer test.

II

Defendant raises two issues on appeal. He first contends that the trial judge erred by admitting evidence that after defendant blew into the breathalyzer and was shown the reading, he made statements indicating his disbelief at the result. Defendant argues that that evidence created an inference that he had registered a reading in excess of the legal limit on the first test. This inference, he maintains, violated the prohibition against admitting a single test result. Additionally, defendant argues, even if the evidence was relevant to show his refusal, the probative value of the evidence was outweighed by its prejudicial effect because it supported an inference that he registered a high reading on the test.

N.C. Gen. Stat. Sec. 20-139.1 (1983) requires that at least two sequential breath samples be taken and that only the lower of the two readings may be used by the State as proof of a person's alcohol concentration in a court proceeding. Section 20-139.1 is complemented by N.C. Gen. Stat. Sec. 20-16.2(a)(3) (1983) which provides that the fact of defendant's refusal to take a breathalyzer test is admissible in evidence at trial. Defendant posits a ques-

tion of first impression in North Carolina which is at what point, if any, does admissible evidence of defendant's refusal to take a breathalyzer test rise to the level of inadmissible evidence of a single test result?

In the instant case defendant stipulated before trial that he had refused to take the breathalyzer test, but the State nonetheless chose to put on evidence of defendant's refusal. Officer Mills gave the following testimony regarding defendant and the test:

Q. Did you ask that he submit to the Breathalyzer Test?

A. Yes, I did.

Q. Did he agree to do so?

A. Yes, he did.

Q. And did he blow into the machine?

A. Yes, he—

ASSISTANT PUBLIC DEFENDER TOWLER: OBJECTION.

THE COURT: OVERRULED.

A. Yes, he did.

Q. Did it register a result?

ASSISTANT PUBLIC DEFENDER TOWLER: OBJECTION.

THE COURT: Objection SUSTAINED as to that.

Q. Did the defendant see the result of this test?

ASSISTANT PUBLIC DEFENDER TOWLER: OBJECTION.

THE COURT: SUSTAINED as to form.

Q. What happened after the Defendant blew?

A. The machine was—showed a reading—

ASSISTANT PUBLIC DEFENDER TOWLER: OBJECTION.

MOVE TO STRIKE.

THE COURT: Since this is—objection SUSTAINED. Do not consider that showed reading, members of the Jury.

State v. Wike

Q. After the Defendant blew, were you there during the time the Defendant was taking the test?

A. Yes. I never left. He never left.

Q. After blowing the first time, did he blow again?

A. No.

Q. What, if anything, did you say at that time?

A. After the results were told him of the first test —

ASSISTANT PUBLIC DEFENDER TOWLER: OBJECTION.

THE COURT: Objection SUSTAINED. Do not consider that, after he was told.

A. He stood up and said —

ASSISTANT PUBLIC DEFENDER TOWLER: OBJECTION.

THE COURT: OVERRULED.

A. He stood up and said, This God dam [sic] machine is not right. There's something wrong with this God dam [sic] machine, and I'm, I'm not taking that test.

Q. What happened then?

A. He was asked to resubmit to another test, or two tests are required, and he was asked to take a breathalyzer again for the second time, and he stated that he would not.

The State need not accept defendant's stipulation to a fact that the State is entitled to prove. It is also clear beyond cavil that proof of any fact, including the fact of a refusal, must be accomplished through the use of relevant evidence. Defendant's exclamations were thus relevant to show his refusal to take the breathalyzer test. Defendant's outburst, however, also contained irrelevant statements regarding his doubts about the machine's accuracy. Defendant argues either that these irrelevant outbursts amounted to the admission of a single reading or at least their probative value was outweighed by their prejudicial effect because the evidence allowed the inference that he registered a high reading. We disagree.

Despite the Prosecutor's persistent attempts to refer in some way to the reading on the breathalyzer test, the trial court permitted none of it. No doubt any mention of a particular reading or a characterization of a reading would have violated N.C. Gen. Stat. Sec. 20-139.1. And such inadmissible evidence could not be saved even if it was couched in terms of a refusal. However, the evidence here did not suggest a reading.

Defendant also argues that evidence that his refusal was adamant after he took the test once was prejudicial because it allowed the jury to infer that he must have registered a reading beyond the legal limit on the first test. The jury is permitted to infer guilt from defendant's refusal. *See South Dakota v. Neville*, 459 U.S. 553, 565, 74 L.Ed. 2d 748, 759 (1983) ("[W]e do not think it fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt . . ."). Defendant would have us make a distinction that, in this case, has no legal significance. He would have us find that he was prejudiced because although the jury could infer that he refused to take the test because he was guilty, they could not infer that he refused to take the test because he would have gotten a high reading. In light of the other evidence of defendant's guilt, including his refusal, we find the possible inference of a high reading harmless in this case.

Because of our resolution of the first issue, we summarily reject defendant's second contention that the trial judge committed prejudicial error by refusing to instruct the jury that they could not infer that defendant received a high reading from his refusal to blow into the breathalyzer a second time.

We find no error.

Chief Judge HEDRICK and Judge WELLS concur.